First case to be argued is United States v. Cebreros. Counsel ready? Your honors, good morning. Barry Burton for Appellant Jose Cebreros. Unless the court has any questions regarding this Rule 609 issue, I think that issue is fully briefed. I'd like to start with the second issue concerning the allegations of misconduct. I assume the court received the government's 28-J letter from a couple days ago conceding error with respect to the use of the reports during the cross-examination of Mr. Cebreros as well as during closing argument. Of course, that is not binding on this court, but I think the evidence is overwhelming that the government crossed the line with the use of that report on numerous occasions during trial. Well, the real question is whether the substantial rights were impaired. Exactly, your honor. And I can't imagine any greater infringement on substantial rights than attacking the credibility of a testifying defendant with evidence that was never introduced at trial and could not have been ever introduced at trial. The government first argues in its letter that the testimony of Mr. Cebreros was not to be believed, that it was implausible. To the contrary, it was actually a very plausible story, a very plausible account of what had happened. It doesn't sound very plausible to me. Well, your honor, in my experience in the Southern District, we have a variety of cases, but the majority of the ones that go to trial are these border bus trials down at the border. And we have any number of factual scenarios in those sorts of cases. But in the spectrum of defenses in this sort of case, this absolutely was a plausible defense. In fact, it was a good defense. I would point to... Well, if you believe it, but it just had all the aspects of a cock and roll story. Well, I point the court to some of the other cases this court has decided and found to the contrary. In fact, the Foster case, which was decided... That's not a plain error case. It's a harmless error case. I agree, your honor. But in that case, the court came to the conclusion that while the account was not a fantastic defense, it was plausible that he had innocent explanations for the reasons that he was in the car, and that was enough. In Foster, the defense was that the person was in Mexico supporting himself by playing guitar and receiving tips, and that he ended up driving the car across the border because his guitar was washed away in a flood. If a defense like that is found by this court to be plausible to be an innocent explanation that was worthy of rejecting harmless errors, certainly Mr. Sobrell's defense in this case needs the same sort of treatment. In addition to his testimony, which by itself was plausible, he actually called a witness who testified as to the persons that he had named who were involved in the case, as well as the location and the fact that they were moving as Mr. Sobrell testified to. So it wasn't just Mr. Sobrell's testimony by itself against the government's evidence. It was the testimony of Mr. Sobrell followed by an independent witness, a neighbor of the person who Mr. Sobrell said put him in the car, who testified and corroborated the account of Mr. Sobrell. So this wasn't just the bare testimony of the defendant. It was actually supported by the testimony of an independent witness. We testified to what, that he went down to buy the car? That he had been helping Martine and Javier move at the time that Mr. Sobrell testified to, and also that those two persons lived at that address and had lived at that address during the time that Mr. Sobrell testified they did. And so this was not just one defendant testifying with nothing in support of that. It was a plausible account by Mr. Sobrell, perhaps not the best defense ever presented down there, but certainly not the worst. A believable account supported by corroborating evidence. And the problem with the misconduct in this case is it went directly to the believability of Mr. Sobrell. In a case like this, the only issue is knowledge. And when a defendant testifies, his testimony, his or her testimony is the centerpiece of the case. And in this case, the government used this law enforcement report to go directly at the believability of the most important witness and the most important part of the case, which was Mr. Sobrell's testimony. Not only during his cross-examination, but three times during closing argument. And given the believability of the story, the innocent explanation that he gave, and the direct attack, unconstitutional attack upon his account by the government on no less than five occasions during trial, I can't imagine that the court could not find that to be affecting substantial rights. Mr. Sobrell is now doing 20 years in prison based upon a conviction in which evidence outside the record that is explicitly excluded from admission was used to directly attack his account of what happened. And given that scenario, I think substantial rights were affected, and I think the error must be noticed by the court. Okay. Thank you. We'll hear from the government. May it please the Court. Good morning. Your Honor. Markings down for the United States. First of all, in regard to the 609 issue, U.S. v. Hirsch controls that issue. That case is directly on point with the situation here, where Hirsch specifically allowed the prior impeachment under 609 of a prior drug possession felony, just as in this case. I'll turn to the... It's not a particularly plausible reading of 609, is it? What does possession of drugs have to do with its honesty? Well, Your Honor, it's a policy question, and possession of drugs is... Well... Do we do policy here? The policy that led to the law, I believe, is that drug possession, whether it's possession, sales, trafficking, et cetera, it's all part of a drug culture, all of which is a life and requires deceit and dishonesty. It's not something that can be done out in the open. All crimes, you know? Pardon? Isn't that true of all crimes? In fact, when you talk about drug possession, my guess is if you took the universe of people who possess drugs, you'd find a substantial number of them have nothing to do with the drug culture that it uses. Well, I think you are part of the drug culture if you're a user. Professionals and college kids. Well, I think if you are a user, you may not be the same as a drug trafficker, but you are part of the drug culture. You might as well say that speeding makes you part of the drug culture. Well, the fact of the matter is... This was a sanitized conviction that was submitted, right? Correct. So it was admitted as a felony conviction. Correct. Without regard to whether it's for drugs or not. Correct. Just as it was in Hirsch. And the fact of the matter is Hirsch says that a prior drug possession felony can be used for this purpose, just like this case. And so I think the inquiry ends there. In regard to the alleged evidentiary errors, all of those errors are... What do you mean alleged evidentiary errors? Well, the three that have been alleged in... There's no question about them, is there? Is there any dispute over the errors having been made, the misconduct of counsel? The only one that's not disputed is the one that we have conceded, where the inspector's report, which was technically not entered into evidence and was referred to on cross-examination and closing, we've conceded error on that one point, yes, Your Honor. But that error was not plain and, in fact, it was utterly harmless in this case. It couldn't have been admitted, could it? Pardon? Could it have been admitted? I think it could have been as a prior consistent statement, Your Honor, based on the sequence of what happened in this case. The fact of the matter is, for all reality purposes, the report was before the jury. The inspector testified that she wrote the report. She refreshed her recollection from the report. She was not cross-examined at any point regarding any discrepancies in the report or omissions from the report. It was so plain, and that was my mistake, it was so plain or so obvious to everyone there that her testimony was derived and basically the same thing as what was in the report, that that is why those questions were asked in the manner they were. Is that your position, that police reports can be admitted to support the testimony of a police officer? No. That's not what I'm saying. As a prior consistent statement? Well, I mean, the testimony, what's in that report that's damning is the statement of the defendant, not the statement of the police officer. Well, in this case, it would be — Is it your position that that could have been admitted? Under prior consistent statement, if the sequence — Under what? Am I catching on? Prior inconsistent statement? The prior consistent statement. Why prior consistent? Because you're introducing it to show the defendant's a liar. He's inconsistent. No. Why would it be prior consistent? Because — You need to see the inspector. Exactly. Because it was — Do I have a question? It's her statement. By the way that the defendant testified, he did question her. But you're introducing it to impeach the defendant. You're not — Well — I didn't say you can bring in a police report and use it to convict the defendant because it's consistent with what the policeman's not testifying. It doesn't make much sense. Well, his statement wouldn't be hearsay, right? Correct. His statement under Rule 801, the prior statement of a party opponent, is not hearsay. Correct. So we're really only talking about the police — the part of the report that contained the police officer. Right. And her statements would clearly be hearsay. I mean, obviously, it wasn't done in this case — You're not claiming that they are business hackers or anything like that. No. No. But the other aspect I want to get to regarding why this was harmless error was that the evidence in this case was overwhelming. This was not a close case. In this case, the defendant was the driver and sole occupant of this vehicle, which contained almost 10 pounds of methamphetamine. The value of that was almost — was over $50,000 wholesale. In Hirsch, at 767, Hirsch says that mere possession of a large quantity of drugs is enough to sustain a conviction. There was also the tampered sending unit that the inspector noticed when she did her initial inspection. And then, of course, you get to the defendant's absurd story. The defendant in this case convicted himself. The jury did not convict him because of the two questions that were asked referring to the inspector's report. The defendant testifies about the story about how his mechanic, whose name he doesn't remember, introduces him to Martine, whose last name he doesn't know, who introduces him to Javier, whose last name he doesn't know. And Javier gets a, quote, spontaneous phone call that the car is ready in Mexico. And he agrees to accompany him down to Mexico at 730 or 7 o'clock on a Friday night to pick up this car. Of course, he doesn't remember the name of the mechanic shop either. They get down to Mexico. They hang out and, quote, check out the car for two hours and then have this discussion about how he wants to consider trading for the car or buying the car because he wants a better gas mileage, better gas mileage from a 1983 BMW with a V6 engine. So then he brings the car back and has his interaction that he does at the border with Inspector Medina. He testifies that even though he's lived in San Diego for six years, he had no idea that drug smuggling existed coming across the U.S.-Mexico border. The jury rejected that story, and that's why they convicted him. They found, in fact, under Stouffer and West, they were allowed to make the inference that, in fact, the opposite of the story was true. He directly denied knowledge. They rejected that. It was his story, his manner in testifying, and the complete unbelievability of that story, which is why they rejected him, not because of these two questions. And the references to the report were never the thrust of the government's cross-examination or closing argument. The thrust of the case was all the things that I've previously mentioned, and most principally the lack of believability of the defendant's story. These were isolated incidents, Your Honors. And under Sanchez v. Robles, if these are isolated incidents, that case says that that is not – that does not warrant reversal and that this Court must defer to the district court who is present and saw how these questions or these statements made an impact on the jury. Remember, none of this was ever objected to by defense counsel at any point during the trial, and the trial court itself never interceded at any point because these errors were so harmless. Now – Well, if you win, it's not – you shouldn't do that sort of thing. Yes. I agree. We concede that. We concede. And like I said, it was my mistake because it was just – it was so obvious, I thought, to everybody there, based on how the inspector had testified and refreshing the memory and the fact that she had testified that she'd written the report. But absolutely, it was beyond what should have been done. You don't care the way you weigh your own evidence by the state of your own case. Yes. I think that's fair. Now, in regard to the last two issues, we don't believe there's any error at all. In regard to the questions that were asked on cross-examination, the appellant says that the defendant was forced to comment on the credibility of these witnesses. That was never the case. The defendant was never put in that position. He was specifically asked for specific facts as to what reason, what specific reasons. The questions were, do you have any reason to doubt her recollection? And then I followed up. Do you have a specific reason, other than you don't remember, to doubt her report? And then, again, do you have any specific reason to cast doubt on her report? If I had wanted the defendant to call the inspector a liar, I would have asked that. I could have asked that. And I would have gotten it out of him if I wanted to. I did not. I was looking for specific facts. And the best proof of that is that the defendant himself never gave that answer because he never felt that he was being put in the box to make that comment. Is this the usual practice, say, when you're part of colleagues to ask your defendant whether he has reason to doubt the veracity of a government witness? I can't speak for other colleagues, Your Honor. Speak for yourself. For myself, I can't recall a case recently other than this one that I asked it in that way. Is it a little far-fetched to expect the defendant to come up with reasons for doubting the government witness's veracity? Well, as I said in my brief, part of the ‑‑ some of the reasons could have been that the inspector was distracted while they had this very brief interaction. She had testified that she was born in ‑‑ How did the defendant know that she was distracted? You were being extra fair is what you're saying. You were sort of giving him a chance to ‑‑ you were doing his lawyer's job because ‑‑  I was ‑‑ What plausible reason would there be in support of your case for asking a question like that? Here's why. And let me just answer your question first. The reason why she could have known that was because they were the only two precipitant witnesses to this conversation. He would have seen if someone else had come up to her, started talking to her during that conversation. But you would expect that kind of question to be asked by his counsel. And if his counsel chooses not to ask the question and you ask the question and he doesn't have a good answer, I mean, it probably is a good reason why his lawyer doesn't ask the question. You ask the question to sort of put him on the spot to emphasize the veracity of a witness. I didn't believe any of those factors existed. Correct. And if he couldn't give me one, then that was helpful information to the jury to ascertain who was more credible. But the point here, the issue is whether he was forced to comment on her being a liar or anything of that nature. And he never ‑‑ That's what it amounts to. I think it's a ‑‑ I don't ‑‑ In proper practice. And I think you ought to take that message away from this argument. At least speaking for myself, I think it's highly objectionable to do that. Your Honor, and Gaston and Sanchez ‑‑ Not just ‑‑ not just Judge Huaz, either. I will. I will ‑‑ I will get that message back. But I just want to make aware of it. Gaston, Sanchez ‑‑ We can still take the message back. But it sounds to me like you're really not. Maybe we need to put something in writing about it. I assure you, I will take the message back. I think that's the unanimous view of the panel. Okay. That's understood. I think you're over your time, unless you want to keep talking. Unless the Court has further questions, I'll rest at this time. Thank you. You have about four minutes on your change, which you have wisely retained for rebuttal. Yes, sir. First, with respect to the Rule 609 issue, all Hirsch says was that in that particular case, it was not an abuse of discretion. We don't know anything about the conviction in that case other than what the conviction was for. That's the problem with these sanitized conviction cases. I just took another look at Hirsch, and, well, it's law of the circuit, so I suppose I shouldn't. Well, there's not really much one can do about it. It seems to me all the reasons that one might allow a conviction disappear once you sanitize it. All you're saying, this is a bad guy, and you can know he's committed some nonspecific felony, and therefore you should not believe him. Whereas it's quite different. You say, look, the guy committed theft, or the guy committed perjury, or the guy committed something. The jury can draw an inference other than he's a bad guy. So it seems to me sanitizing the conviction makes it worse, perhaps. I agree. It's certainly worse. But that's what Judge Todd said. The other side of that is that if it's not sanitized, then the jury can well conclude, well, he committed a drug offense before, so he probably committed at this point. Which is exactly the analysis that needs to be made under the third Brown factor. If we're just going to admit sanitized felonies in all these cases, we might as well take the five-factor Brown test and throw it out the window because all that's going to come in in every case is a felony. And as Your Honor pointed out, what is the utility of telling the jury that a defendant has been convicted of just a generic felony? The jury has no idea what it was for. They might think it was for a violent, heinous crime as opposed to possession of narcotics. The district court needs to make a determination based upon the five factors articulated in Brown, not sanitize it and say, well, the similarity is not there because we're going to just call it a felony. That's an in-run around the Brown test, and the district court in this case needed to make the five-factor inquiry based upon the 1993 possession of cocaine conviction. I think this is a good argument. It's probably best reserved for your petition for a hearing if you should lose because, of course, we can't overrule Hirsch. Hirsch is binding, and for all I can – I can't think of any way of distinguishing it. I think that's distinguishable, Your Honor, is that Hirsch went on the facts of that particular case. Clearly, Hirsch says that the court in that case found that there is some probative value, some level of probative value with a drug possession conviction. But, again, we don't know anything more about the conviction from Hirsch, and Hirsch is controlled by the facts of that particular case. And this is the one – But six or nine involves a review for abuse of the district court's discretion. Exactly. And what Hirsch seems to say to me, whether one agrees with the answers or not, but what it does seem to say to me is that when you have a sanitized drug possession conviction, that's not an abuse of discretion. They don't give any other factors. They just say this is not an abuse of discretion. And what's more, it's sanitized, so that makes it better. They don't explain why it's better, but I don't know how we can pull back from that. Well, again, well, first of all, that was the one issue the trial counsel did object to in this case, and so it is abuse of discretion as opposed to plain error. But in Hirsch, the court went through the five-factor test. I assume the district court did. I assume the panel in this court looked at the five-factor analysis by the district court and said, we don't believe the district court abused its discretion in doing that analysis. And in this case, Your Honors did do the same analysis. And while Hirsch certainly says in that particular case there was no abuse of discretion, it by no means says that in every case a drug possession conviction qualifies under the five factors. For instance, what if a district court allowed in a drug possession conviction sanitized from 1970? I don't think this court would be bound by Hirsch to say that, well, that's okay because it was sanitized. This court clearly has set forth a five-factor test. The factors need to be analyzed one by one. And when you're all done, you sum it up. You look at whether the probative value substantially outweighs this circuit's test, substantially outweighs the prejudicial effect. If it does, the conviction comes in. If it does not, the conviction is excluded. And the sanitization should not be a part of that analysis. Very briefly regarding the misconduct, the government cites Whitehead. Velarde Gomez was, of course, on bond case decided after Whitehead and has a very, very different take on whether a person in a car with a commercial amount of drugs equals overwhelming evidence. Clearly Velarde Gomez said it didn't. I mentioned the foster case with this flood and the guitar washing away. Velarde Gomez involved a person who had been a prostitute at a bar, and that led to him being in a car. These cases are tough cases for the government to win. They're almost entirely consisting of circumstantial evidence. They're very, very close cases. There's acquittals every single month in San Diego on these exact border bus cases. This account by Mr. Sobrell's was not only plausible. It was actually a good defense supported by independent evidence. The to the contrary of. But the jury didn't buy it. And the question is whether or not this report, which was not objected to. The jury didn't buy it, I believe, because the government, not in an isolated fashion, throughout this cross-examination and throughout closing, attacked his testimony with evidence outside the record. The government doesn't seem to believe there's a difference between a testimony of an officer and her report. Well, there's a huge difference. In the eyes of a jury, a law enforcement report is a work product of the U.S. government. It must not have been that different, or was defense counsel jumping up and down? I don't know what defense counsel was thinking. It was a travesty that there was no objection for these numerous instances of misconduct. I don't know what the district court was thinking, letting this occur. But, again, Mr. Sobrell's is doing 20 years right now based upon a conviction in which his testimony, the most crucial part of the case, was repeatedly attacked and undermined by a law enforcement report that was never introduced into evidence and could not have been introduced. Thank you very much, Your Honors. Thank you. We'll stand for a few minutes. We'll next hear an argument in Paris v. Lewis.
judges: Noonan, Kozinski, Schwarzer